IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

|  |  |  |
|---|---|---|
| DAVID GEORGE HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:10-cv-337-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM  OPINION AND ORDER

David George Harris ("Plaintiff" or "Harris") filed an application for Social

Security disability insurance benefits and supplemental security income on June 28, 2006,

for a period of disability which allegedly began August 1, 2003.  (Tr. 82-92).  Plaintiff's

application was denied and Harris underwent a hearing before an Administrative Law

Judge ("ALJ") on May 28, 2008.  (Tr. 9).  The ALJ issued an unfavorable decision on

July 10, 2008.  (Tr. 6).  Once the Appeals Council rejected review, (Tr. 1) the ALJ's

decision became the final decision of the Commissioner of Social Security

("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The

Court has jurisdiction over this lawsuit pursuant to 42 U.S.C. §§ 405(g) and the parties

consent to the undersigned rendering a final judgment in this lawsuit pursuant to 28

---

[1] Pursuant to the Social Security Independence and program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred tot he Commissioner of Social Security.

U.S.C. § 636 (c)(1) and M.D. Ala. LR 73.1.  .  For the reasons that follow, the Court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Harris seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits and supplemental security income.  United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405 (2006).  The Court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id.*

## II. BACKGROUND

Harris testified that he applied for the benefits because of the "[c]umulative effect of diabetes, hepatitis, depression, at that point."  (Tr. 23).  The record lacks any indication of accident or any other incident which might trigger the onset of disability.  The ALJ found that "[i]t is noteworthy that documentation of record does not contain any hospitalizations for the claimant for physical and/or mental health conditions since his alleged onset of disability."  (Tr. 18).

The ALJ notes that "[r]ecords from Joseph Johnson, M.D., the claimant's treating physician, reveal the claimant has been treated for diabetes and hypertension since at least March 2002."  (Tr. 15, 265-306.).  From 2002 until approximately April 2008 Harris saw Dr. Johnson at least fifteen times.  *Id.*  In many of these visits the medical record notes

that "HE IS FEELING WELL AND COMES IN FOR A CHECK UP" or words to that effect.  (Tr. 269). (all caps in original text) (see also, Tr. 273-74, 277-79, 282, 287-88).

In March of 2005, Dr. Mary B. Wirship, M.D., completed a form for the Pennsylvania Department of Public Welfare in which she opines Harris was "temporarily disabled - less than 12 months" due to "Major depression, single episode, severe" as well as "generalized anxiety disorder, panic disorder."  (Tr. 215).  Dr. Wirship stated the period of disability was three months and did not order any followup instructions or exclusions in physical activity.  *Id.*

On October 5, 2006, Dr. J. Walter Jacobs, Ph.D., conducted a consultative psychological evaluation of Harris wherein Harris was diagnosed with "Major Depression, Recurrent, Mild."  (Tr. 233-36).  Dr. Jacobs states "Mr. Harris has experienced bouts of depression and anxiety but there seems to be only mild residual depression." *Id*. at 235.  Dr. Jacobs further states that "[t]here is a distinct likelihood that the symptoms of depression are actually symptoms of a breathing related disorder. *Id*. Dr. Jacobs addressed Harris' daily activities and medical history and found nothing else that significantly impedes his abilities. *Id*.

On October 17, 2006, Dr. M. Hope Jackson, Ph.D., reviewed Harris' medical record and determined that there are no severe impairments.  (Tr. 243-55).  Dr. Jackson noted the diagnoses of "major depression, recurrent, mild" and reviewed Harris' complete medical history. *Id*.  At the conclusion Dr. Jackson states that "[d]espite being in no

treatment for depressive symptoms, the claimant appears to be functioning adequately with no significant limitations." *Id*. at 255.

Harris was also examined by Dr. Vijay Vyas, M.D. on October 17, 2006 at the request of the Social Security Administration.  (Tr. 237-42).  Dr. Vyas noted the diabetes, Hepatitis and the depression diagnosis throughout Harris' medical history, but made no significant findings as to the impairment caused by these ailments.  *Id*.  Otherwise, Dr. Vyas found Harris is essentially normal, including unremarkable shoulders, elbows, wrists, fingers, and knees, with normal ankle, normal gait, the ability to walk on toes, heels, bend, and squat without any significant pain or restriction.  (Tr. 239-40).  The ALJ reviewed Dr. Vyas' medical records and noted the impact of each of the medical conditions upon Harris.  (Tr. 16).  From the medical records the ALJ could see Harris' diabetes and hypertension were controllable by medication as well as that "claimant also reported that he has Hepatitis C but his liver function tests were normal."  (Tr. 16).

The last medical record entry before the Court is from April, 2008 by Dr. Johnson which states "[h]e is doing well and has no particular complaints" and that "[h]e comes in today for a checkup."  (Tr. 304).

### III. Standard Of Review

The Court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  The Court "may not decide the

facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating the court should not re-weigh the evidence). The Court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) and *MacGregor v. Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's

decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129,131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.; Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## IV. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

the poverty line.[3]  Eligibility for SSI is based upon proof of indigence and disability.  *See*

42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  Despite the fact they are separate programs,

the law and regulations governing a claim for DIB and a claim for SSI are identical;

therefore, claims for DIB and SSI are treated identically for the purpose of determining

whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir.

1986).  Applicants under DIB and SSI must provide "disability" within the meaning of

the Social Security Act which defines disability in virtually identical language for both

programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§

404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is

unable to:

> Engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous
> period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one

resulting from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42

U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation

process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§

---

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

404.1520, 416.920 (2010).

> (1)   Is the person presently unemployed?
> (2)   Is the person's impairment(s) severe?
> (3)   Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[4]
> (4)   Is the person unable to perform his or her former occupation?
> (5)   Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the

---

[4] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[5] ("grids") or hear testimony from a Vocational Expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

## V. STATEMENT OF THE ISSUES

Plaintiff alleges the ALJ made two errors. (Pl. Br. at 4). First, Plaintiff argues "[t]he Commissioner's decision should be reversed, because the ALJ erred by failing to find Mr. Harris' depression a severe impairment." *Id*. Next, Plaintiff argues "[t]he Commissioner's decision should be reversed, because the ALJ failed to issue a proper credibility finding in compliance with the law of the Eleventh Circuit." *Id*. The issues and arguments Harris raises turn upon this Court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622, 624-25 (11th Cir. 1987).

---

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

**VI. DISCUSSION AND ANALYSIS**

**A.      The ALJ correctly found Harris' depression is not a severe impairment.**

The ALJ found Harris suffers from the severe impairments of "diabetes mellitus, hypertension, obesity, and degenerative joint disease" (Tr. 11) and applied the appropriate analysis thereto in finding that there was no impairment or combination of impairments that were so severe as to cause Harris to be disabled under the Act.  (Tr. 9-19).  Harris argues the ALJ should have found he suffers from depression, a severe impairment.  The Court finds the decision by the ALj is supported by the substantial weight of the evidence.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *Phillips*, 357 F.3d at 1241.  Good cause exists if the opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records.  *Id.* at 1241-42.  The ALJ must give "explicit and adequate reasons for rejecting the opinion of a *treating physician*."  *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (emphasis added).

Uncontroverted evidence reveals Dr. Johnson was the primary treating physician and the bulk of the medical evidence from 2002 until 2008 came from Dr. Johnson.  (Tr. 15).  The ALJ examined the medical records from Dr. Johnson and concluded that "Dr. Johnson recommended no work restrictions, did not refer the claimant to a pain clinic, or suggest the need for anything other than conservative treatment.  *Id*.  Dr. Johnson

continued to see Harris after his 2006 diagnosis of "Major Depression, Recurrent, Mild" by Dr. Jacobs.  Dr. Johnson "dismissed the claimant as far as controlled substances were concerned" but offered to continue to see Harris in regards to his diabetes or any other medical issues he may have.  *Id*. at 12-15.

An ALJ "'may reject any medical opinion if the evidence supports a contrary finding.'"  *Williams v. Astrue*, 416 Fed.Appx 861, 863 (N.D. Fla. 2011) (quoting *Sharfarz v. Bowne*, 825 F.2d 278, 280 (11th Cir. 1987)).  The ALJ must weigh the medical opinion based on the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the medical evidence supporting the opinion; consistency with the record a whole; specialization in the medical issues at issue; other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527.  The ALJ did not reject the medical opinions but rather gave them more weight than Harris' testimony because all the medical records of treating physicians, as well as those from consultants, reveal that to the extent Harris suffers from depression the depression is mild, recurrent or a singular event, or that "there was a distinct likelihood that the symptoms of depression are actually symptoms of a breathing related sleep disorder."  (Tr. 12).

The record is clear that the ALJ considered the evidence from Dr. J. Walter Jacobs, Ph.D., a consulting examiner, who concludes that "Mr. Harris has experienced bouts of depression and anxiety but there seems to be only mild residual depression."  (Tr. 235) "Findings of fact made by State agency medical and psychological consultants and other

program physicians and psychologists regarding the nature and severity of an individuals

impairments must be treated as expert opinion evidence of nonexamining sources."

Social Security Ruling (SSR) 96-6, 1996 WL 374180, at *1.  While Dr. Jacobs is not a

state agency consultant he is an examining source whose findings were held by the ALJ to

be in conformity with the other medical evidence.  (Tr. 12).  The ALJ examined all of the

medical evidence and made specific references, to each of the medical reports before the

ALJ concluded that Harris' depression is not a severe impairment and that there is not an

impairment or combination of impairments which render Harris disabled under the ACT.

The Court agrees and finds no error on the part of the Commissioner.

**B.**     **The ALJ's credibility findings comply with the law of the Eleventh Circuit.**

Harris argues the ALJ's credibility finding did not comply with Eleventh Circuit

precedent and constitutes reversible error.  The ALJ articulates sufficient facts to disregard

Harris' testimony.

The Eleventh Circuit stated "there is no rigid requirement that the ALJ specifically

refer to every piece of evidence in his decision so long as [his] decision . . . is not a broad

rejection which is 'not enough to enable [a court] to conclude that the ALJ considered [a

claimant's] medical condition as a whole.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th

Cir. 2005) (quoting *Foote*, 67 F.3d at 1561).  In *Tieniber v. Heckler*, 720 F.2d 1251, 1255

(11th Cir. 1983), the Eleventh Circuit held "this circuit does not require an explicit finding

as to credibility," but will accept the implications which are obvious to the reviewing court.

It is the duty of the ALJ to develop a full and fair record.  *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).  A full and fair record enables the reviewing court "to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir.1988) (internal quotations and citations omitted).  This Court will reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dep't of Health and Human Servs*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The burden of proving disability rests on the claimant, and the claimant is responsible for producing evidence that supports his claim and allows both the ALJ and the Commissioner to reach the proper conclusion.  20 C.F.R. § 416.912(a).  An impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Once again, "a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  *Foote*, 67 F.3d at 1562 (citing *MacGregor*, 786 F.2d at 1054).

A treating physician's testimony must be given substantial or considerable weight unless "good cause" is shown to the contrary.  *Crawford v. Comm'r of Soc Sec.*, 363 F.3d 1155, 1159 (M.D. Fla. 2004); *see* 20 C.F.R. § 404.1527(d)(2) (stating that, generally, more weight is given to opinions from treating sources).  The ALJ may consider the reports and

assessments of state agency physicians as expert opinions. 20 C.F.R. § 416.927(f)(2)(i).

"Even if the ALJ fails to make an explicit credibility determination as to a friend's testimony or statements, however, we will not find error if the credibility determination was implicit in the rejection of the claimant's testimony." *Robinson v. Astrue*, 365 Fed.Appx. 993, 998 (11th Cir. 2010) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1254-55 (11th Cir. 1983)). The Court recognizes that "[t]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir. 2005); *see also Mixon v. Astrue*, 2011 WL 867213, *6 (M.D. Ala. 2011) (quoting *Dyer*). "[T]hough the ALJ did not specifically reference the reports, his statement that his findings were made after consideration of the entire record are sufficient to support this Court's finding that he did, in fact, consider the information." *Mixon,* 2011 WL 867213, *6. When the Court, after reviewing the entirety of the record of proceedings, is able to determine that the ALJ considered Harris's medical condition as a whole it is then considered to be substantially supported by the evidence and is not the perview of the Court to simply overrule the ALJ's decision. *Newsom ex rel. Bell. v. Barnhart*, 444 F.Supp.2d 1195, 1197-98 (M.D. Ala. 2006) (quoting *Dyer*, 395 F.3d at 1211). "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *McCray v. Massanari*, 175 F.Supp.2d 1329, 1336 (M.D. Ala. 2001) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).

While the ALJ did not explicitly state why he chose to discredit Harris's subjective

testimony the record shows the ALJ did conduct a thorough review of the medical records from the various medical and physiological professionals seen by Harris as well as an analysis of the records, with due consideration to the testimony of Harris. (Tr. 11-18). The ALJ found that Harris suffers from the severe impairments of diabetes mellitus, hypertension, obesity and degenerative joint disease.  (Tr. 11).  The ALJ found no limitations from Hepatitis C, which is consistent with the testimony from Harris that he does not suffer from any of the symptoms of Hepatitis C. (Tr. 26).  The ALJ noted the consistencies between both the treating physician as well as the consultations by other physicians who each conclude Harris' diabetes remains treatable by medications and that his depression is "only mild residual depression." (Tr. 12-16).  To reach his conclusion, the ALJ considered medical evidence from Dr. Jacobs, Dr. Jackson, Dr. Johnson, and Dr. Vyas.  *Id*. at 12-16.  The medical records considered by the ALJ span from 2002 until 2008 with details from each of the treating and consultative medical care providers regarding what Harris is able to do rather than details concerning what Harris is unable to do. *Id*.

Harris argues that the ALJ improperly focuses on Harris' ability to perform normal daily activities. (Pl. Br. 7-8). The ALJ addressed each of the "four broad functional areas set out in the disability regulations for evaluating mental disorders in section 12.00C of the Listing of Impairments (20 CFR, Part 4040, Subpart P, Appendix 1)." (Tr. 12). The functional areas are; activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation. *Id*. at 12-13. Harris alleges that the ALJ "failed

to take notice that [he] gets winded easily, and 'then becomes super fatigued'" and that

"'participation in everyday activities of short durations, such as housework or fishing' does

not disqualify a claimant from disability." (Pl Br. 8) (quoting *Lewis*, 125 F.3d at 1441).

However, the record shows that the ALJ, when addressing each of the factors for evaluating

mental disorders gave detailed statements beginning with "[t]his is supported by, inter alia,"

and then proceeds to refer to specific medical records that support mild limitations in three

of the four functional areas, with no limitation in the fourth. (Tr. 12-13).

Harris avers that the ALJ erred by denying benefits based on noncompliance with

treatment if there is evidence that a claimant cannot afford treatment. Harris failes to note

that the ALJ took into account the overall noncompliance of Harris. (Pl. Br. 9) (citing to

*Dawkins v. Bowen*, 848 F.2d 1211, 1214 (11th Cir. 1988)); (Tr. 17). The ALJ notes that the

"records reveal [Harris] received good results from his medication" he states that "the

undersigned is not persuaded by the claimant's allegations that he has been financially unable

to obtain medical treatment." (Tr. 17). The ALJ stated "it extremely significant that Dr.

John[son] dismissed the claimant on August 2, 2007 as far as controlled substances were

concerned." *Id.* The medical record from that date state:

> We have had several things happen to make us decide to stop prescribing
> lortab for him. One thing, he had marijuana in his urine last year. In addition,
> his wife recently brought in her medicines and she was out sooner than she
> should have been; we dismissed her because of that. In talking to her, we also
> asked her to bring her husband's bottle back, and she told us that he had it in
> his car and he was out of town; she couldn't get it that day. We allowed her
> to wait until the weekend was over to bring it in. Even with that, she did not

> bring her husband's bottle with her.  When I discussed that with him today, he
> said that he was in the north but that was not the information given by her
> when she was here.  Because of these irregularities, we have made a decision
> to stop prescribing controlled substances and we explained that to him today.
> (Tr. 266).

The ALJ also noted that Harris reported to Dr. Yvyas that he was not following his diet for

his diabetes.  (Tr. 17).

"The regulations provide that refusal to follow prescribed medical treatment without

a good reason will preclude a finding of disability."  *Dawkins*, 848 F.2d at 1213. (citing 20

C.F.R. § 416.930(b)).  Furthermore, "[a] medical condition that can reasonably be remedied

either by surgery, treatment, or medication is not disabling."  *Id*. (quoting *Lovelace v. Bowen*,

813 F.2d 55, 59 (5th Cir. 1987)).  It is generally recognized that poverty as the sole reason

for noncompliance excuses said noncompliance.  *Id*.  The Court notes that the reason the ALJ

denied benefits was not Harris's poverty rather the record clearly shows that the ALJ

considered noncompliance in a broader sense, including those factors that had nothing to do

with Harris' alleged inability to afford treatment.  The Court also notes that the ALJ

recognized that "the claimant was receiving his medication through the Prescription

Assistance program; so there is no reason why he should not have taken his medications as

prescribed."  (Tr. 17).

The Court recognizes that the ALJ may use his discretion to decide the weight to

assign to testimony from Harris about pain and other symptoms so long as the ALJ articulates

the reasons for that decision.  *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)

Page 17 of  20

(wherein the court held that because the ALJ did not set out why the testimony was discredited, the complainant's testimony was held to be true).  Generally, the Court will not reverse credibility findings of the ALJ.  In the exercise of discretion the ALJ must articulate the reasons for discrediting the witnesses testimony.  *See Jones v. Dep't. of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (stating that the ALJ must give reasons that are based on substantial evidence if they chose to discredit the claimant's testimony).  Harris argues that the ALJ must cite specific reasons for the credibility finding and the reasons for that weight.  (Pl. Br. 7) Immediately after this assertion by Harris he quotes the ALJ stating that Harris statements "are not credible to the extent that *they are inconsistent with the above cited residual functional capacity*." *Id.* (emphasis added).  The fact that the testimony was inconsistent with the functional capacity test is the specific reason the ALJ gave for not giving Harris' testimony greater weight.  Furthermore, the ALJ discussed the inconsistencies within the medical records as well as the fact that Harris' "daily activities also suggest capability to perform significant work activity" as well as a functional capacity evaluation "demonstrated ability to perform the physical demands of sedentary to light work. (Tr. 18).

The ALJ uses the phrase "[a]fter careful consideration of the entire record," signals that the ALJ considered the testimony by Harris in conjunction with the other medical evidence and testimony presented to the ALJ.  (Tr. 11).  The Court has examined the ALJ decision in this case under the well-known instruction from *Wilson* which states "[i]f the ALJ

discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002). It is true that the ALJ in this case did not employ any signal phrases such as "Harris is not credible because . . ." or "objective medical findings indicate untruthful testimony. . ." A full reading of the opinion with respect to the credibility of Harris indicates the ALJ had sufficient evidence to discount the testimony from Harris that he is disabled and cannot work. Notwithstanding the ALJ's failure to highlight his credibility with specific language, the juxtaposition of Harris' testimony compared to the balance of the medical evidence convinces this Court that the ALJ articulates adequate grounds for his findings. The ALJ's reasons to reject Harris' testimony were implicit, and do not provide grounds for reversal. The Court finds that the ALJ gave sufficient weight and consideration to all evidence in accordance with 20 C.F.R § 404.1529 and SSR 96-7p, as well as gave sufficient reasoning within the opinion as to why the ALJ chose not to credit Harris's testimony. *See Holt*, 921 F.2d at 1223.

## V. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, ORDERED that the decision of the Commissioner is AFFIRMED. A separate judgment will be entered.

Done this the 6th day of September, 2011.

/s/ Terry F. Moorer

TERRY F. MOORER

UNITED STATES MAGISTRATE JUDGE